IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., *Plaintiff,* | § § § § | |
| v. | § § | CIVIL ACTION NO. 4:20-CV-02913 |
| M. KATHERINE BANKS, *Defendant.* | § § § | |

---

**DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

TODD A. DICKERSON
Attorney-in-Charge
Texas Bar No. 24118368
Todd.Dickerson@oag.texas.gov
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667

**COUNSEL FOR DEFENDANT**

# TABLE OF CONTENTS

Table of Contents............................................................................................................ii

Index of Authorities......................................................................................................iii

Summary of the Argument...........................................................................................1

Issues Presented and Standards of Review ..............................................................3

Nature and Stage of the Proceeding ..........................................................................4

   I.  PETA Spams TAMU's Livestreamed Graduation Celebrations;
      TAMU Deletes Less than 25% of PETA's Comments. .....................................4

   II.  An Overview of PETA's Claims, Alleged Injuries, and Requests for Relief....................5

   III. The Procedural Background: Following TAMU's First Motion to Dismiss,
       PETA Files an Amended Complaint that Mirrors its Initial Complaint.........................7

Argument..........................................................................................................................8

   I.  PETA Lacks Standing........................................................................................8

     A.  Over 120 Years of Precedent Require PETA to Sue the Official who
        Enforces TAMU's Social Media Policy; PETA did Not...............................8

     B.  PETA's Injury Allegations do Not Meet Article III's Requirements........................12

        1.    PETA did Not Meet the Standing Test Applicable to its Posting Injury. ..........12

        2.    PETA's Restoration Injury is Neither Imminent Nor Redressable....................17

        3.    PETA's Reading Injury Fails as PETA did Not Allege that TAMU
            Deleted Other Protesters' Comments and as PETA did Not Meet the
            Requirements for Third-Party Standing. ...........................................18

     C.  PETA did Not Meet the Requirements for Organizational or Associational
        Standing. ....................................................................................19

   II.  PETA is Not Entitled to the *Ex parte Young* Exception Due to the Lack
      of an Enforcement Connection and an Ongoing Violation of Federal Law. ...............21

   III. PETA's § 1983 Claim Fails as PETA did not Plausibly Allege that a TAMU
       Policy or Custom was the Moving Force Behind the Constitutional Violation. ...........23

Conclusion.....................................................................................................................25

Certificate of Service ...................................................................................................26

## INDEX OF AUTHORITIES

### Federal Cases

*281 Care Comm. v. Arneson,*
   766 F.3d 774 (8th Cir. 2014) ..................................................................14

*Abbott v. Pastides,*
   900 F.3d 160 (4th Cir. 2018) ................................................13, 14, 15, 17

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.,*
   851 F.3d 507 (5th Cir. 2017) ............................................................. 9, 21

*Anderson* v. *Valdez,*
   845 F.3d 580 (5th Cir. 2016) ....................................................................4

*Arizona Students' Ass'n v. Arizona Bd. of Regents,*
   824 F.3d 858 (9th Cir. 2016) ..................................................................24

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................4

*Babbitt v. United Farm Workers Nat. Union,*
   442 U.S. 289 (1979) ................................................................................10

*Barilla v. City of Houston, Texas,*
   13 F.4th 427 (5th Cir. 2021) ............................................................ 13, 14

*Block v. Texas Bd. of Law Examiners,*
   952 F.3d 613 (5th Cir. 2020) ....................................................................4

*Blum v. Holder,*
   744 F.3d 790 (1st Cir. 2014) ..................................................................14

*Bond v. United States,*
   742 Fed. Appx. 735 (4th Cir. 2018) ................................................. 13, 15

*Bronson v. Swensen,*
   500 F.3d 1099 (10th Cir. 2007) ..............................................................10

*California v. Texas,*
   141 S. Ct. 2104 (2021) ............................................................9, 10, 11, 12

*Chase v. Senate of Virginia*,
  No. 3:21-CV-54, 2021 WL 1936803 (E.D. Va. May 13, 2021) ...............................................23

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ...............................................................................................21

*Clapper v. Amnesty Intern. USA*,
  568 U.S. 398 (2013) ...................................................................................13, 14, 15, 17

*Commonwealth of Massachusetts v. Mellon*,
  262 U.S. 447 (1923) ...............................................................................................................13

*Ctr. For Indiv. Freedoms v. Carmouche*,
  449 F.3d 655 (5th Cir. 2006) ...............................................................................................16

*Deutsch v. Annis Enterprises, Inc.*,
  882 F.3d 169 (5th Cir. 2018) ...............................................................................................14

*Digital Recognition Network, Inc. v. Hutchinson*,
  803 F.3d 952 (8th Cir. 2015) ...............................................................................................10

*Drown v. Utah State Off. of Educ.*,
  767 F. App'x 679 (10th Cir. 2019) ......................................................................................23

*Eaton v. Meneley*,
  379 F.3d 949 (10th Cir. 2004) .............................................................................................13

*El Paso County, Tex. v. Trump*,
  982 F.3d 332 (5th Cir. 2020) ...............................................................................................19

*Elend v. Basham*,
  471 F.3d 1199 (11th Cir. 2006) ...........................................................................................15

*Ex parte Young*,
  209 U.S. 123 (1908) .......................................................................................................passim

*Fed. Election Comm'n v. Lance*,
  635 F.2d 1132 (5th Cir. 1981) .............................................................................................16

*Fitts v. McGhee*,
  172 U.S. 516 (1899) .................................................................................................................8

*FPL Food, LLC v. U.S. Dep't of Agric.*,
  671 F. Supp. 2d 1339 (S.D. Ga. 2009) ...............................................................................20

*Funeral Consumers All., Inc. v. Serv. Corp. Intern.,*
    695 F.3d 330 (5th Cir. 2012) ...................................................................................20

*Gonzalez v. Ysleta Independent School Dist.,*
    996 F.2d 745 (5th Cir. 1993) ...................................................................................25

*Green v. Mansour,*
    474 U.S. 64 (1985) ...................................................................................................21

*Hafer v. Melo,*
    502 U.S. 21 (1991) ...................................................................................................24

*Hancock County Bd. of Sup'rs v. Ruhr,*
    487 Fed. Appx. 189 (5th Cir. 2012) ........................................................................20

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) .................................................................................................19

*Haverkamp v. Linthicum,*
    6 F.4th 662 (5th Cir. 2021) ............................................................................. 10, 11

*Hay v. Thaler,*
    No. CIV.A. H-09-4075, 2011 WL 1237940 (S.D. Tex. Mar. 7, 2011), *aff'd,* 470 F. App'x
    411 (5th Cir. 2012) ...................................................................................................24

*Henschen v. City of Houston, Tex.,*
    959 F.2d 584 (5th Cir. 1992) ...................................................................................16

*Hunt v. Washington State Apple Advert. Comm'n,*
    432 U.S. 333 (1977) .................................................................................................20

*Itserve All., Inc. v. Nielsen,*
    No. 3:18-CV-1823-K, 2019 WL 2539240 (N.D. Tex. Feb. 11, 2019) ......................20

*Jemsek v. Rhyne,*
    662 F. App'x 206 (4th Cir. 2016) .............................................................................23

*Johnson v. Rodriguez,*
    110 F.3d 299 (5th Cir. 1997) ...................................................................................24

*Justice v. Hosemann,*
    771 F.3d 285 (5th Cir. 2014) ...................................................................13, 14, 15

*Kentucky v. Graham,*
    473 U.S. 159 (1985) ................................................................................................24

*Laird v. Tatum,*
    408 U.S. 1 (1972) ........................................................................................... 13, 15

*Laufer v. Mann Hosp., L.L.C.,*
    996 F.3d 269 (5th Cir. 2021) ...............................................................................11

*Los Angeles County, Cal. v. Humphries,*
    562 U.S. 29 (2010) ..................................................................................................24

*Machete Productions, L.L.C. v. Page,*
    809 F.3d 281 (5th Cir. 2015) ........................................................................ 13, 15

*McCarthy ex rel. Travis v. Hawkins,*
    381 F.3d 407 (5th Cir. 2004) ...............................................................................21

*MDPhysicians & Assoc., Inc. v. State Bd. of Ins.,*
    957 F.2d 178 (5th Cir. 1992) ..................................................................................4

*Mi Familia Vota v. Abbott,*
    977 F.3d 461 (5th Cir. 2020) ...............................................................................11

*Mississippi State Democratic Party v. Barbour,*
    529 F.3d 538 (5th Cir. 2008) ........................................................................ 14, 15

*Missourians for Fiscal Accountability v. Klahr,*
    830 F.3d 789 (8th Cir. 2016) ...............................................................................14

*Moore v. Bryant,*
    853 F.3d 245 (5th Cir. 2017) ..................................................................................4

*Morris v. Livingston,*
    739 F.3d 740 (5th Cir. 2014 ........................................................................ 11, 21

*Morrison v. Bd. of Educ. of Boyd County,*
    521 F.3d 602 (6th Cir. 2008) ........................................................................ 13, 15

*N.A.A.C.P. v. City of Kyle, Tex.,*
    626 F.3d 233 (5th Cir. 2010) ...............................................................................19

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott,*
    647 F.3d 202 (5th Cir. 2011) ...............................................................................19

*Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
    508 U.S. 656 (1993) ...................................................................................................17

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ...................................................................................................13

*OCA-Greater Houston v. Tex.*,
    867 F.3d 604 (5th Cir. 2017) ....................................................................................19

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001) ............................................................................... 8, 10

*Rio Grande Found. v. City of Santa Fe, New Mexico*,
    7 F.4th 956 (10th Cir. 2021) ............................................................................. 13, 15

*Rivera v. Houston Indep. Sch. Dist.*,
    349 F.3d 244 (5th Cir. 2003) ....................................................................................24

*Rushing v. Bd. of Sup'rs of Univ. of Louisiana Sys.*,
    No. CIV. A. 06-623-C, 2008 WL 4200292  (M.D. La. Sept. 11, 2008).................24

*Saltz v. Tenn. Dep't of Emp't Sec.*,
    976 F.2d 966 (5th Cir. 1992) ....................................................................................21

*Seals v. McBee*,
    898 F.3d 587 (5th Cir. 2018) ....................................................................................17

*Spec's Fam. Partners, Ltd. v. Nettles*,
    972 F.3d 671 (5th Cir. 2020) ....................................................................................22

*Speech First, Inc. v. Cartwright*,
    6:21-CV-313-GAP-GJK, 2021 WL 3399829 (M.D. Fla. July 29, 2021) ...............16

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) ...................................................................... 13, 14, 16

*Speech First, Inc. v. Killeen*,
    968 F.3d 628 (7th Cir. 2020) ...................................................................... 13, 14, 16

*Speech First, Inc. v. Schlissel*,
    939 F.3d 756 (6th Cir. 2019) .............................................................................. 16, 19

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ....................................................................................14

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ..............................................................................................20

*Support Working Animals, Inc. v. Governor of Florida*,
    20-12665, 2021 WL 3556779 (11th Cir. Aug. 12, 2021) ........................................10

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................................................passim

*Tenth St. Residential Ass'n v. City of Dallas, Tex.*,
    968 F.3d 492(5th Cir. 2020) ............................................................................ 8, 19

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) .......................................................................... 11, 21

*Tex. Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020) ................................................................................11

*Tex. Democratic Party v. Benkiser*,
    459 F.3d 582 (5th Cir. 2006) ................................................................................19

*Tex. Democratic Party v. Hughs*,
    20-50683, 2021 WL 1826760 (5th Cir. May 7, 2021) ...........................................11

*Texas Peace Officers Ass'n v. City of Galveston, Tex.*,
    944 F. Supp. 562 (S.D. Tex. 1996) .......................................................................20

*Trudeau v. Univ. of N. Texas*,
    No. 4:19-CV-00723-RWS, 2020 WL 4745752 (E.D. Tex. July 14, 2020) .............23

*Turlock Irr. Dist. v. F.E.R.C.*,
    786 F.3d 18 (D.C. Cir. 2015) ...............................................................................19

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.*,
    535 U.S. 635 (2002) ............................................................................................21

*Virginia Off. for Prot. & Advoc. v. Stewart*,
    563 U.S. 247 (2011) ............................................................................................21

*Whitley v. Hanna*,
    726 F.3d 631 (5th Cir. 2013) ................................................................................25

*Whole Woman's Health v. Jackson*,
    2021 WL 3910722 (U.S. Sept. 1, 2021)..................................................................9

*Whole Woman's Health v. Jackson,*
　21-50792, 2021 WL 4128951 (5th Cir. Sept. 10, 2021) ........................................11

*Will v. Michigan Dep't of State Police,*
　491 U.S. 58 (1989) ................................................................................................24

*Williams ex rel. J.E. v. Reeves,*
　954 F.3d 729 (5th Cir. 2020) ...............................................................................22

*Willoughby v. U.S. ex rel. U.S. Dep't of the Army,*
　730 F.3d 476 (5th Cir. 2013) .................................................................................4

*Zimmerman v. City of Austin, Tex.,*
　881 F.3d 378 (5th Cir. 2018) ........................................................................14, 15

**Federal Statutes**

42 U.S.C. § 1983 ...................................................................................4, 23, 24, 25
42 U.S.C. § 1988(b) ...............................................................................................23
42 U.S.C. § 1998(b) ...............................................................................................23

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) .....................................................................................4, 20
Fed. R. Civ. P. 12(b)(6) ...........................................................................................4

**Other Authorities**

Executive Order GA-08 ............................................................................................1
Executive Order GA-14 ............................................................................................1
Executive Order GA-16 ............................................................................................1
Executive Order GA-21 .........................................................................................1, 4

## SUMMARY OF THE ARGUMENT

It was early May 2020. We were just a few months into the COVID-19 crisis. Texans were under unprecedented restrictions due to the maturing pandemic.[1] These were trying times, but life had to go on as best it could. For Texas A&M University ("TAMU") students, this meant they had to graduate without their loved ones there to cheer them on.

TAMU tried to provide a little light during these dark times. TAMU livestreamed graduation celebrations on its social media pages so that friends and family members could share in this life-defining event from the safety of their own homes.

To People for the Ethical Treatment of Animals, Inc. ("PETA"), these May 2020 livestreams were not celebrations to be enjoyed, but opportunities to be exploited. PETA bombarded viewers of these livestreams with hundreds of messages criticizing TAMU's research practices.

PETA admits that less than 25% of its spammed comments were deleted and that TAMU's social medial policy limits comments to only those directly related to the topic of the original post. PETA admits that over 420 of its comments were not deleted, and that these over 420 comments were identical or nearly identical to the deleted ones. PETA alleges no facts suggesting this deletion was anything more than a one-time event. PETA does not (and cannot) allege that TAMU permanently blocked its commentators due to this incident. PETA alleges no material harm it suffered from having a small portion of its comments deleted.

---

[1] *See, e.g.*, Executive Orders GA-08, GA-14, GA-16, GA-21. These executive orders are publicly available at https://tinyurl.com/cau7zv8m.

Despite all this, PETA has sued over this now 500-day-old incident. PETA claims that some unnamed TAMU employee's decision to apply the social medial policy's "on-topic" requirement was, in fact, viewpoint- and content-based discrimination in violation of the First Amendment. PETA's claims are nonjusticiable and inadequately pled for numerous reasons.

For example, PETA sued TAMU's President, M. Katherine Banks, in her official capacity. But over 120 years of binding precedent require there to be an enforcement connection between the official sued and the challenged law for both standing and *Ex parte Young* purposes. PETA alleges no facts suggesting that President Banks is the appropriate enforcement officer for TAMU's social media policy.

PETA claims the May 2020 incident hampers its ability to advocate on TAMU's social media sites. But PETA does not allege any concrete and specific plans to engage in similar protests in the imminent future. And no objectively reasonable person would self-censor his speech due to TAMU's social media policy, which does not meaningfully penalize violations.

PETA also claims an injury as TAMU has not restored the deleted comments. But PETA does not allege that users are interacting with these old graduation videos. And TAMU submits sworn testimony showing there are no removed comments left to restore—largely because nearly all of PETA's comments were deleted (as opposed to hidden) in May 2020. Further, PETA claims an injury due to its desire to read comments posted by other like-minded protesters. But PETA does not identify a single instance where TAMU deleted such a comment.

Moreover, PETA needed to assert an "ongoing violation of federal law" to overcome TAMU's sovereign immunity. Following TAMU's last motion to dismiss, PETA asked for the

chance to bolster its allegations on this point. Yet PETA's amended complaint relies on the same core facts—the May 2020 deletion incident—that made its initial complaint defective. For these and other reasons, TAMU asks this Court to dismiss PETA's claims in their entirety.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

1. **Standing and Sovereign Immunity (Enforcement Connection):** Over 120 years of precedent require there to be an enforcement connection between the state official sued and the challenged law for both standing and *Ex parte Young* purposes. PETA sued President Banks over TAMU's application of its social media policy. But PETA alleges no facts suggesting that President Banks enforces this policy. Are PETA's claims against President Banks justiciable?

2. **Standing (Posting Injury):** PETA alleges the May 2020 deletion incident hampers its ability to advocate on TAMU's social media sites. But PETA did not allege that (1) its speech was chilled due to this incident; (2) it has concrete and imminent plans to post similar comments in the future; or (3) there are any meaningful barriers preventing PETA from posting such comments. Does PETA have standing to assert its posting injury?

3. **Standing (Restoration Injury):** PETA alleges an injury as TAMU has not restored the deleted comments. But PETA did not allege that users are meaningfully interacting with these over 500-day-old videos, and TAMU presents sworn testimony showing there are no removed comments within TAMU's power to restore at this point. Is PETAs restoration injury sufficiently imminent and redressable to confer standing?

4. **Standing (Reading Injury):** PETA alleges it would be injured if TAMU deleted comments posted by other like-minded protesters. But PETA did not allege TAMU has deleted or imminently will delete such comments. And PETA did not explain why it has standing to challenge the deletion of comments made by non-PETA members. Does PETA have standing to assert its reading injury?

5. **Organizational Standing:** To have organizational standing, an entity must allege that the challenge conduct "perceptibly impaired" its mission. PETA did not allege that the May 2020 deletion incident perceptibly impaired its mission in any meaningful way. Does PETA have organizational standing?

6. **Associational Standing:** To have associational standing, an entity must identify a threat of injury to at least one of its members. PETA generally claims that protest comments either were or will be made by its "employees and supporters." But PETA did not identify a threat of injury to any specific individual, nor did it allege that these "employees and supporters" are members of its organization. Does PETA have associational standing?

7. **Sovereign Immunity (Ongoing Violation):** PETA relies on the *Ex parte Young* exception to overcome TAMU's sovereign immunity. But this exception only applies if there is an "ongoing violation of federal law." PETA's injuries stem from the one-time partial deletion of its comments in May 2020. Is PETA entitled to the *Ex parte Young* exception to TAMU's sovereign immunity?

8. **Section 1983:** PETA asserts a § 1983 claim. For such a claim to be viable: (1) the entity's custom or policy must have played a part in the constitutional violation; and (2) when the policy did not compel the violation, the plaintiff must show the entity was deliberately indifferent. TAMU's social media policy did not compel the complained-of violations, and PETA did not allege that TAMU was deliberately indifferent. Has PETA alleged a plausible § 1983 claim?

The standing and sovereign immunity issues go to the court's jurisdiction over the dispute and thus are subject to a Fed. R. Civ. P. 12(b)(1) motion to dismiss.[2] On such a motion, the "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[3] PETA bears the burden of proving its claims are justiciable.[4]

The § 1983 issue is analyzed under Fed. R. Civ. P. 12(b)(6).[5] Such a motion turns on whether the plaintiff pled a "plausible" (as opposed to a "possible") claim for relief.[6]

## NATURE AND STAGE OF THE PROCEEDING

I.    **PETA Spams TAMU's Livestreamed Graduation Celebrations; TAMU Deletes Less than 25% of PETA's Comments.**

In early May 2020, TAMU livestreamed graduation celebrations on its Facebook and YouTube pages[7] due to the COVID-19 pandemic.[8] The three videos relevant here are: (1) one video for TAMU's College of Veterinary Medicine & Biomedical Sciences ("Vetmed &

---

[2] *See, e.g.*, *Block v. Texas Bd. of Law Examiners*, 952 F.3d 613, 616–17 (5th Cir. 2020); *Moore v. Bryant*, 853 F.3d 245, 248–49 (5th Cir. 2017).

[3] *MDPhysicians & Assoc., Inc. v. State Bd. of* Ins., 957 F.2d 178, 181 (5th Cir. 1992) (quotations omitted).

[4] *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).

[5] *Anderson* v. *Valdez*, 845 F.3d 580, 589 (5th Cir. 2016).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] Dkt. 39, ¶¶ 60–83.

[8] *See, e.g.*, Executive Order GA-21, 3, 6 (continuing social gathering restrictions and school closures due to the COVID-19 pandemic). A copy of this executive order is publicly available at https://tinyurl.com/vxdstc.

BIMS'')'s graduation celebration, which was posted on the Vetmed & BIMS Facebook page; and (2) two videos for TAMU's university-wide graduation celebration, which were posted on TAMU's main Facebook and YouTube pages.[9]

During the livestreams, PETA's "employees and supporters" bombarded viewers of these videos with 563 spam messages protesting TAMU's research practices.[10] Less than 25% of PETA's comments (137 in total) were deleted.[11] PETA's comments violated TAMU's social media policy, which warns that comments not "directly related to the topic of the original post from the page . . . may be removed."[12] PETA admits that many of its non-deleted comments "were identical or nearly identical to comments that were deleted."[13] PETA notes that TAMU later deleted the YouTube video in question.[14] PETA does not allege that the deletion of the YouTube video was itself an unconstitutional act.[15]

## II.     An Overview of PETA's Claims, Alleged Injuries, and Requests for Relief.

PETA claims the May 2020 deletion of its comments was viewpoint- and content-based discrimination in violation of the First Amendment.[16] PETA brings an as-applied challenge to the way some unidentified TAMU employee used the social media policy to delete PETA's comments; PETA did not bring a facial challenge against the policy itself.[17]

---

[9] Dkt. 39, ¶¶ 60–83.

[10] *Id.* at ¶¶ 61, 69, 79.

[11] *Id.* at ¶¶ 61, 70, 79.

[12] *Id.* at ¶ 44; Declaration of Krista Berend ("Berend Decl."), ¶ 5; Declaration of Jennifer Gauntt ("Gauntt Decl."), ¶ 4.

[13] Dkt. 39, ¶¶ 63, 71.

[14] *Id.* at ¶ 80.

[15] *See id,* at ¶¶ 60–83.

[16] *Id.* at ¶ 85. PETA also claims that TAMU violated its right "to petition the government," although it is unclear what this claim is based on or how it differs from PETA's other claims. *See id.*

[17] *See id*.; *see also id.* at pg. 25 (Prayer for Relief).

PETA alleges three injuries due to the May 2020 incident. First, PETA claims TAMU is hampering its ability to post future protest comments on TAMU's social media sites.[18] Yet PETA did not allege that it posted comments to TAMU's social media pages following the May 2020 incident and had those comments deleted.[19] Also, PETA did not allege any specific plans for posting such comments in the near future.[20] Further, PETA did not (and cannot) allege that TAMU permanently blocked the May 2020 commentators from TAMU's social media sites.[21]

Second, PETA alleges an injury as TAMU has not restored the deleted comments to the May 2020 Facebook videos.[22] Yet PETA did not allege that users are coming to TAMU's social media page, finding these over 500-day-old videos, and reading the posted comments.[23] Also, PETA admits it posted hundreds of protest messages to these videos that were never deleted and thus remain available to future viewers.[24]

Finally, PETA alleges it would be injured if TAMU deleted comments posted by other like-minded protesters.[25] Yet PETA did not allege a single instance where TAMU deleted comments posted by these unidentified individuals.[26] And, as PETA's commentators were not blocked from TAMU's social media sites, they can view any comments posted by third parties.

---

[18] *Id.* at ¶¶ 66, 74, 82.

[19] *See id.* at ¶¶ 60–83.

[20] *See id.*

[21] *See id.*; Berend Decl., ¶ 14; Gauntt Decl., ¶ 14.

[22] Dkt. 39, ¶¶ 65, 73. PETA did not allege this injury for the removed video on TAMU's YouTube page. *See id.* at ¶¶ 76–83.

[23] *See id.* at ¶¶ 65, 73.

[24] *See id.* at ¶¶ 60–83.

[25] *Id.* at ¶¶ 67, 75, 83.

[26] *See id.*

PETA seeks solely prospective relief for its claims; PETA did not assert a claim for damages.[27] PETA sued TAMU's President, M. Katherine Banks, in her official capacity.[28] PETA asserts that President Banks has general "authority over all TAMU's policies and practices."[29] PETA did not allege that President Banks (1) played any role in the May 2020 incident or (2) has the particular duty to enforce TAMU's social medial policy.[30]

## III.  The Procedural Background: Following TAMU's First Motion to Dismiss, PETA Files an Amended Complaint that Mirrors its Initial Complaint.

PETA's initial complaint concerned the same claims (First Amendment speech claims) over the same incident (the May 2020 deletion incident) at issue in its amended complaint.[31] TAMU moved to dismiss PETA's initial complaint on justiciability grounds.[32] TAMU mainly argued that PETA (1) was not entitled to the *Ex parte Young* exception due to the lack of an ongoing violation of federal law and (2) did not plausibly allege an "imminent" injury.[33] At oral argument, PETA's counsel "asked for the opportunity to replead to make the[se] allegation more clear."[34] The Court granted PETA leave "to amend its complaint once again to bolster its allegations of an ongoing violation of the United States Constitution."[35] The Court specified: "This will be the last time PETA is given an opportunity to amend."[36] PETA

---

[27] *Id.* at pg. 25 (Prayer for Relief).
[28] *See, e.g., id.* at ¶ 5.
[29] *See id.*
[30] *See id.* at ¶¶ 60–83.
[31] *Compare* Dkt. 1, *with* Dkt. 39.
[32] Dkt. 16.
[33] *Id.* at 5–8.
[34] Dkt. 35, 2.
[35] *Id.* at 2–3.
[36] *Id.* at 3.

then filed an amended complaint that mirrored its initial complaint.[37] This motion to dismiss followed.

ARGUMENT

## I.    PETA Lacks Standing.

To have standing, PETA must meet Article III's injury-in-fact, traceability, and redressability requirements.[38] PETA fails on all three counts.

### A.    Over 120 Years of Precedent Require PETA to Sue the Official who Enforces TAMU's Social Media Policy; PETA did Not.

To have standing, a plaintiff must sue the official with the particular duty to enforce the law in question. PETA violates this core jurisdictional rule.

Over 120 years of caselaw support the need to sue an official with enforcement authority. In 1899, the U.S. Supreme Court found the Eleventh Amendment requires there to be a "special relation" between "the state officers named" and the "particular statute alleged to be unconstitutional."[39] About a decade later the Court, in *Ex parte Young*, reframed this analysis as requiring state officers to "have some connection with the enforcement of the act" due to Eleventh Amendment concerns.[40] For the next 100 years, courts applied *Ex parte Young* to find "that the defendant state official must have some enforcement connection with the challenged statute."[41]

---

[37] *Compare* Dkt. 39, ¶¶ 60–86, *with* Dkt. 1, ¶¶ 60–74.
[38] *See, e.g.*, *Tenth St. Residential Ass'n v. City of Dallas, Tex.*, 968 F.3d 492, 499 (5th Cir. 2020).
[39] *Fitts v. McGhee*, 172 U.S. 516, 530 (1899).
[40] 209 U.S. 123, 157 (1908).
[41] *Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001).

8

The need for an enforcement connection applies equally in the standing context, an analysis that "significant[ly] overlaps" with *Ex parte Young*.[42] As the Supreme Court explained a few months ago in *California v. Texas*: "[O]ur cases have consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future."[43] There, the Court found the plaintiffs did not satisfy Article III's traceability requirement as they did not show how the named government officials "will act to enforce [the challenged statute]."[44] As to redressability, the Court noted that remedies "operate with respect to specific parties" and not "on legal rules in the abstract."[45] The Court found that redressability was lacking as it could not enjoin the Secretary of Health and Human Services from enforcing a statute that "he ha[d] no power to enforce."[46] Nor could the plaintiffs rely on the federal Declaratory Judgment Act, which "cannot alone supply jurisdiction otherwise absent."[47]

More recently, in *Whole Woman's Health v. Jackson*, the Supreme Court vacated an injunction to Texas's S.B. 8 on jurisdictional grounds.[48] In doing so, the Court also framed the issue in terms of "enforcement," noting the State's "represent[ation] that neither it nor its executive employees possess the authority to enforce the Texas law either directly or indirectly" and the private defendant's sworn statement "that he has no present intention to enforce the law."[49] As the Court explained: "[F]ederal courts enjoy the power to enjoin

---

[42] *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 514 (5th Cir. 2017).
[43] 141 S. Ct. 2104, 2114 (2021) (citing cases).
[44] *Id.* at 2114.
[45] *Id.* at 2115 (quotations omitted).
[46] *Id.* at 2116.
[47] *Id.*
[48] 21A24, 2021 WL 3910722, at *1 (U.S. Sept. 1, 2021).
[49] *Id.*

individuals tasked with enforcing laws, not the laws themselves."[50] *California v. Texas* and *Whole Woman's Health* reflect well-settled precedent requiring an enforcement connection between the official sued and the law at issue.[51]

PETA lacks standing as it did not plausibly allege that President Banks (1) was involved in the May 2020 deletion incident or (2) had the particular duty to enforce TAMU's social medial policy.

*Haverkamp v. Linthicum* is instructive on this point. The plaintiff (Haverkamp) was an incarcerated biological male who identified as a transgender woman.[52] Haverkamp sued various state officials, claiming they violated the constitution "by denying Plaintiff medically necessary medically necessary sex-reassignment surgery and by failing to provide certain female commissary items and a long-hair pass."[53] The Fifth Circuit found that the claim against Dr. Lannette Linthicum, the Director of TDCJ's Health Services Division, was barred by sovereign immunity as Haverkamp did not plausibly link her to the alleged unlawful decisions:

> [A]ssuming Linthicum is joined in her capacity as the head of Health Services for TDCJ, the operative complaint contains no allegation plausibly linking Linthicum with the challenged decisions. Put simply, in a system with approximately 130,000 inmates in custody, and absent any allegations tying

---

[50] *Id.* (citing *California v. Texas*, 141 S. Ct. at 2123).

[51] *See, e.g., Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."); *Support Working Animals, Inc. v. Governor of Florida*, 20-12665, 2021 WL 3556779, at *5 (11th Cir. Aug. 12, 2021) ("[A] plaintiff's injury isn't redressable by prospective relief where other state actors, who aren't parties to the litigation, would remain free and clear of any judgment and thus free to engage in the [enforcement] conduct that the plaintiffs say injures them . . . ."); *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) ("The redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute.") (quotations omitted); *Bronson v. Swensen*, 500 F.3d 1099, 1112 (10th Cir. 2007) ("The absence of a nexus between Swensen's enforcement powers and the challenged criminal provisions renders ineffectual plaintiffs' requested prospective relief."); *Okpalobi*, 244 F.3d at 426 ("The requirements of *Lujan* are entirely consistent with the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of-statute.").

[52] *Haverkamp v. Linthicum*, 6 F.4th 662, 665 (5th Cir. 2021) (per curiam).

[53] *Id.*

> Linthicum to the specific decisions at issue, it cannot be plausibly inferred that Linthicum played any role in the decisions Haverkamp challenges as unconstitutional.[54]

*Haverkamp* shows that a plaintiff must do more than sue the head of a state agency to allege a plausible enforcement connection. While *Haverkamp* analyzed the issue under *Ex parte Young*, the Court's cite to *Laufer* (a standing decision) shows it is equally applicable in the standing context.[55]

TAMU is a sprawling university with over 70,000 enrolled students,[56] 17 academic colleges and two branch campuses,[57] and nearly 5,000 faculty members.[58] President Banks is not handling low-level issues such as deciding which comments on TAMU's social media sites should or should not be deleted, and PETA alleges no facts suggesting otherwise. Rather, PETA sued President Banks solely due to her general "authority over all TAMU policies and practices."[59] But *Haverkamp* and numerous other Fifth Circuit decisions show that an official's *general* authority over a law is insufficient; the official must have the *particular* duty to enforce the law in question and a demonstrated willingness to do so.[60]

---

[54] *Id.* at 671 (citing *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271–72 (5th Cir. 2021)).

[55] *See id.*; *Laufer*, 996 F.3d at 217–72.

[56] *At a Glance*, Texas A&M, https://www.tamu.edu/about/at-a-glance.html (last visited Oct. 18. 2021).

[57] *Academics*, Texas A&M, https://www.tamu.edu/academics/index.html (last visited Oct. 18. 2021).

[58] *At a Glance*, *supra* note 56.

[59] Dkt. 39. ¶ 5.

[60] *See, e.g.*, *Haverkamp*, 6 F.4th at 671; *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) ("Although the precise scope of the requirement for a connection has not been defined, the plaintiff at least must show the defendant has 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'") (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)), cert. denied, 141 S. Ct. 1124 (2021); *see also Whole Woman's Health v. Jackson*, 21-50792, 2021 WL 4128951, at *4 (5th Cir. Sept. 10, 2021); *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400–01 (5th Cir. 2020); *Tex. Democratic Party v. Hughs*, 20-50683, 2021 WL 1826760, at *2–3 (5th Cir. May 7, 2021); *Mi Familia Vota v. Abbott*, 977 F.3d 461, 468–69 (5th Cir. 2020).

PETA's alleged injuries are not fairly traceable to President Banks or redressable by this Court as President Banks did not delete PETA's comments or otherwise enforce TAMU's social media policy.[61] Thus, PETA lacks standing to sue President Banks.

### B.     PETA's Injury Allegations do Not Meet Article III's Requirements.

PETA alleges three injuries, which stem from its interests in: (1) posting future comments on TAMU's social media pages (the "posting injury"); (2) having its deleted comments restored to the videos in question (the "restoration injury"); and (3) reading future comments posted by like-minded advocates (the "reading injury").[62] PETA's injury allegations do not meet Article III's injury-in-fact, traceability, and redressability requirements.

### 1.     PETA did Not Meet the Standing Test Applicable to its Posting Injury.

PETA's posting injury is nonjusticiable as PETA did not allege: (1) an objectively reasonable chilling injury due to the May 2020 incident; (2) a serious intent, backed by concrete plans, to post protest comments on TAMU's social media sites in the imminent future; and (3) that it faces a credible threat of prosecution under TAMU's social media policy.

PETA relies on the three-part standing test recently reaffirmed by the Supreme Court in *Susan B. Anthony List v. Driehaus*[63] (the "*Driehaus*" test).[64] Under this test, the plaintiff must show: (1) an intent to engage in a course of conduct arguably affected with a constitutional interest; (2) that conduct is proscribed by the challenged statute; and (3) there exists a credible threat of prosecution under that statute.[65]

---

[61] *See, e.g.*, *California*, 141 S. Ct. at 2113–16.
[62] Dkt. 39, ¶¶ 65–67, 73–75, 82–83.
[63] 573 U.S. 149, 159 (2014) (hereinafter "*Driehaus*").
[64] *See* Dkt. 18, 8.
[65] *Driehaus*, 573 U.S. at 159, 161–66.

For *Driehaus's* test to apply, there must be a legally cognizable injury at the heart of the plaintiff's claims.[66] In *Driehaus* and other cases applying this test, the injury is most often (if not exclusively) a chilling injury; the plaintiff has self-censored (or imminently will self-censor) to avoid penalties imposed by the challenged statute.[67] To be justiciable, the plaintiff must allege a "specific present objective harm or a threat of a specific future harm"; allegations of a "subjective chill" are insufficient.[68] The objective/subjective distinction (1) ensures the alleged chilling injuries are sufficiently concrete,[69] and (2) guards against "self-inflicted" injuries, which are insufficient to confer standing.[70]

*Driehaus's* test also turns on whether the plaintiff's alleged injury is sufficiently imminent. "In the context of prospective injunctive and declaratory relief, past exposure to illegal conduct, by itself, does not evince a present case or controversy and thus cannot establish standing."[71] A plaintiff seeking solely prospective relief must meet the stricter

---

[66] *See, e.g.*, *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("[A] party . . . must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement . . . ."); *Morrison v. Bd. of Educ. of Boyd County*, 521 F.3d 602, 609 (6th Cir. 2008)("[A]bsent proof of a concrete harm, where a First Amendment plaintiff only alleges inhibition of speech, the federal courts routinely hold that no standing exists.").

[67] *See, e.g.*, *Driehaus*, 573 U.S. at 155; *Barilla v. City of Houston, Texas*, 13 F.4th 427, 431–32 (5th Cir. 2021); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330–31 (5th Cir. 2020), *as revised* (Oct. 30, 2020); *Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014); *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004).

[68] *Laird v. Tatum*, 408 U.S. 1, 14 (1972).

[69] *See, e.g.*, *Rio Grande Found. v. City of Santa Fe, New Mexico*, 7 F.4th 956, 960 (10th Cir. 2021) (noting that, to satisfy "the irreducible minimum of standing," the "plaintiff must allege more than a subjective chill—an objective basis must render the alleged chilling effect on the plaintiff plausible") (quotations omitted); *Bond v. United States*, 742 Fed. Appx. 735, 737 (4th Cir. 2018) ("Subjective or speculative accounts of a chilling effect or allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm. The chilling effect must have some objective manifestation and be objectively reasonable.") (cleaned up).

[70] *See, e.g.*, *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 418 (2013) (hereinafter "*Amnesty International*"); *Glass v. Paxton*, 900 F.3d 233, 238 (5th Cir. 2018); *Morrison*, 521 F.3d at 610.

[71] *Machete Productions, L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

standing test applied to "imminent" (as opposed to "actual") injuries.[72] Fifth Circuit precedent requires a plaintiff to show a "serious intent," backed by "concrete plans or [other] objective evidence," to engage in the regulated conduct.[73]

*Driehaus's* test is best understood with these principles in mind. This test is largely designed to weed out injuries that are not imminent or that are otherwise subjective.[74] PETA does not meet this test for five reasons.

First, PETA did not allege it refrained from posting comments on TAMU's social media sites due to the May 2020 incident.[75] PETA thus did not allege a chilling injury. This fact distinguishes this case from *Driehaus* and countless others applying its test.[76] To carry its burden on standing, PETA will need to explain (1) what injury it is actually asserting and (2) cite caselaw finding that injury to be legally cognizable in the First Amendment, prospective

---

[72] *See, e.g.*, *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019); *Deutsch v. Annis Enterprises, Inc.*, 882 F.3d 169, 173 (5th Cir. 2018); *see also Amnesty International*, 568 U.S. at 409 (explaining the differences between actual and imminent injuries).

[73] *See, e.g.*, *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 546 (5th Cir. 2008); *Zimmerman v. City of Austin, Tex.*, 881 F.3d 378, 389 (5th Cir. 2018); *Justice*, 771 F.3d at 291.

[74] *See, e.g.*, *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018) (noting that a plaintiff's standing to assert a First Amendment claim for prospective relief turns whether there is "a realistic threat of legal sanction" or some other "objectively good reason for refraining from speaking"); *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016) ("A First Amendment plaintiff who faces a credible threat of future prosecution suffers from an ongoing injury resulting from the statute's *chilling effect* on his desire to exercise his First Amendment rights.") (cleaned up); *Blum v. Holder*, 744 F.3d 790, 796 (1st Cir. 2014) ("The Supreme Court has long held that . . . [a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.") (cleaned up); *281 Care Comm. v. Arneson*, 766 F.3d 774, 780 (8th Cir. 2014) ("Reasonable chill exists when a plaintiff shows an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by the statute, and there exists a credible threat of prosecution.") (cleaned up).

[75] *See* Dkt. 39, ¶¶ 60–83.

[76] *See, e.g.*, *Driehaus*, 573 U.S. at 155; *Barilla*, 13 F.4th at 431–32; *Speech First, Inc.*, 979 F.3d at 330–31; *Justice*, 771 F.3d at 291; *Abbott*, 900 F.3d at 176; *Missourians for Fiscal Accountability*, 830 F.3d at 794; *Blum*, 744 F.3d at 796; *281 Care Comm.*, 766 F.3d at 780.

relief context. The standing test PETA relies on seemingly does not apply outside the self-censorship/chilling context, and we found no other test that would save PETA's claims.

Second, even if PETA asserted a chilling injury, any self-censorship would not be objectively reasonable. Violations of TAMU's social media policy carry no penalties save for removal of the offending comment itself.[77] TAMU did not block or threaten to block PETA's commentators following the May 2020 incident. And PETA admits that over 75% of its comments were not deleted.[78] No reasonable person would be deterred from posting future comments under the circumstances. A finding otherwise would obliterate both Article III's requirement that a plaintiff's injury be "concrete" and the well-settled precedents holding that subjective chilling and self-inflicted injuries are nonjusticiable.[79]

Third, PETA did not meet the "intent to engage in a course of conduct" prong of the *Driehaus* test. PETA did not identify any "concrete plans" or other evidence of its "serious intent" to post protest comments on TAMU's social media sites in the imminent future.[80] PETA's sole allegation on this point is a vague legal conclusion that it "wishes to continue posting comments about TAMU laboratories" at some unspecified time.[81] The Fifth Circuit and other courts have found similar allegations insufficient to create an imminent injury.[82]

---

[77] *See* Berend Decl., ¶ 5; Gauntt Decl., ¶ 4.

[78] *Id.* at ¶¶ 61, 63, 70–71, 79.

[79] *See, e.g.*, *Amnesty International*, 568 U.S. at 418; *Laird*, 408 U.S. at 14; *Glass*, 900 F.3d at 238; *Rio Grande Found.*, 7 F.4th at 960; *Bond*, 742 Fed. Appx. at 737; *Morrison*, 521 F.3d at 609–10.

[80] *See, e.g.*, *Mississippi State Democratic Party*, 529 F.3d at 546; *Zimmerman*, 881 F.3d at 389; *Justice*, 771 F.3d at 291.

[81] Dkt. 39, ¶¶ 66, 74, 82.

[82] *See, e.g.*, *Machete Prods., L.L.C.*, 809 F.3d at 288 ("Machete failed to show any imminent plans to produce another film in the *Machete* franchise. . . . By failing to show any concrete and imminent plans for such a film, it failed to establish a real and immediate threat that it would be denied an Incentive Program grant in an allegedly unlawful way.") (quotations omitted); *Elend v. Basham*, 471 F.3d 1199, 1206–07 (11th Cir. 2006) ("Given the entirely speculative inquiry of whether Plaintiffs will protest again and—even assuming that such a protest will take place—the unspecified details of where, at what type of event, with what number of people, and posing what kind of security risk, we are being asked to perform the judicial equivalent of shooting blanks

Fourth, PETA did not meet the "credible threat of prosecution" prong of the *Driehaus* test. Credible fears of penalties other than incarceration can support a pre-enforcement chilling injury.[83] But the threatened harm must be "sufficient to justify pre-enforcement review."[84] This requires there to be a "coercing" penalty—some sort of "real consequence" reasonably chilling the plaintiff's expressive activity.[85] But here, there are no meaningful penalties associated with violations of TAMU's social media policy. As such, PETA is left with a subjective and self-inflicting chilling injury, which is insufficient to confer standing.

Finally, PETA argues that standing is "relaxed" when "the constitutional right to engage in free speech is at stake."[86] But the Fifth Circuit recently confirmed that only "court-imposed prudential requirements of standing" can be relaxed in the First Amendment context: "[Plaintiffs] still must show that they satisfy the core Article III requirements of injury,

---

in the night. Consistent with our obligation to adjudicate only a live case or controversy, we refuse to pull the trigger."); *see also Henschen v. City of Houston, Tex.*, 959 F.2d 584, 589 (5th Cir. 1992) ("The burden should lie upon the challenger of such a regulatory scheme to assert his standing by showing that the challenged ordinance disadvantages his free speech interests in some tangible way, before we are called to intrude upon local legislative prerogative. To rule on the facial constitutionality of the one-parade-a-day ordinance simply because one *ad hoc* group failed to receive a permit on one occasion would be no more than a prediction.").

[83] *See, e.g., Driehaus*, 573 U.S. at 165–66; *Speech First, Inc.*, 979 F.3d at 323, 332–38.

[84] *Driehaus*, 573 U.S. at 165.

[85] *See, e.g., Speech First, Inc. v. Killeen*, 968 F.3d 628, 642 (7th Cir. 2020) (finding the plaintiff lacked standing to challenge a university's policy due to an insufficient "level of coercion" imposed by the policy at issue); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 765 (6th Cir. 2019) (noting there must be "a real consequence that objectively chills speech" and finding this requirement satisfied when the defendant's referral could lead to punishments such as a "criminal conviction or expulsion"); *Speech First, Inc. v. Cartwright*, 6:21-CV-313-GAP-GJK, 2021 WL 3399829, at *5 (M.D. Fla. July 29, 2021) ("A program that has no authority to discipline students and cannot compel students to engage with it does not objectively chill conduct unless there is evidence to the contrary."); *cf. Fed. Election Comm'n v. Lance*, 635 F.2d 1132, 1141 (5th Cir. 1981) ("It is reasonable to suppose that even if section 441b were overbroad it would not have a 'chilling effect' substantial enough to justify invoking the overbreadth exception to the standing rule, since no one need risk criminal or civil penalties to test the statute's constitutionality.").

[86] Dkt. 18, 8 (citing *Ctr. For Indiv. Freedoms v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006)).

causation, and redressability."[87] PETA lacks standing as it did not satisfy Article III's core standing requirements for its posting injury.

### 2. PETA's Restoration Injury is Neither Imminent Nor Redressable.

PETA claims an injury as its May 2020 deleted comments were not restored to the videos in question.[88] PETA lacks standing to assert this injury for two reasons.

First, to be justiciable, there must "a likelihood that the injury will be redressed by a favorable decision," meaning that "the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative."[89] TAMU has shown that it cannot restore the overwhelming majority of PETA's removed comments and that it has already restored the three removed PETA comments within its power to restore.[90] Thus, PETA's restoration injury fails on redressability grounds.

Second, PETA's restoration injury also fails on "imminent" grounds. In *Glass v. Paxton*, the Fifth Circuit set forth a two-step approach for analyzing whether an injury is too speculative to confer standing: (1) identify the core injury at issue; (2) if the injury involves a "chain of contingencies," the court must "identify each contingency prompting the [injury]."[91] "Each link in the chain of contingencies must be 'certainly impending' to confer standing."[92]

---

[87] *Seals v. McBee*, 898 F.3d 587, 591 (5th Cir. 2018), as revised (Aug. 9, 2018).

[88] Dkt. 39, at ¶¶ 65, 73. This injury is specific to the two Facebook graduation videos; PETA did not allege it for the subsequently removed YouTube graduation video. *See id.* at ¶¶ 76–83.

[89] *Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663–64 (1993) (quotations omitted).

[90] Berend Decl., ¶¶ 6–13; Gauntt Decl., ¶¶ 5–13.

[91] 900 F.3d 233, 239 (5th Cir. 2018) (quotations omitted).

[92] *Id.*; *see also Amnesty International*, 568 U.S. at 413 ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").

PETA's core injury is its inability to convey its protest message to future viewers of the May 2020 graduation celebration videos. This injury involves three contingencies: (1) individuals will watch TAMU's over 500-day-old videos; (2) these viewers will read the comments posted to the videos; and (3) these viewers would have seen PETA's deleted comments (if they were restored) while missing PETA's many other non-deleted comments that "were identical or nearly identical to [the] comments that were deleted."[93] PETA did not show that each of these contingencies are certainly impending.[94] Thus, PETA lacks standing to assert its restoration injury.

### 3.   PETA's Reading Injury Fails as PETA did Not Allege that TAMU Deleted Other Protesters' Comments and as PETA did Not Meet the Requirements for Third-Party Standing.

PETA claims it would be injured if TAMU deleted comments posted by other like-minded protesters.[95] There are two problems with this injury.

First, PETA did not allege a single instance where TAMU deleted protest comments placed by these other unidentified advocates.[96] Nor does PETA allege that it is blocked or otherwise prevented from reading comments posted on TAMU's social media sites.[97]

Second, PETA would seemingly need to have third-party standing to challenge the deletion of others' comments. Yet PETA neither alleged a "close relationship" with these other advocates nor identified a "hindrance to the third party's ability to protect his or her own interests," as required to assert third-party standing.[98] While courts relax the third-party

---

[93] Dkt. 39, ¶¶ 63, 71.
[94] *See id.* at ¶¶ 65, 73.
[95] *Id.* at ¶¶ 67, 75, 83.
[96] *See id.* at ¶¶ 67, 75, 83.
[97] *See id.* at ¶¶ 60–83.
[98] *See Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).

standing requirement for facial challenges to an overbroad statute,[99] PETA did not bring such a claim here.[100]

In sum, PETA did not satisfy Article III's core requirements for its three alleged injuries. Thus, this suit should be dismissed for lack of standing.

### C.    PETA did Not Meet the Requirements for Organizational or Associational Standing.

It is unclear whether PETA asserts standing in its organizational or associational capacities. Either way, PETA lacks standing for three reasons.

First, under both organizational and associational standing, PETA must either show that itself or one of its members has satisfied Article III's standing requirements.[101] As explained above, PETA did not make this showing.[102]

Second, to assert organizational standing, PETA must show that TAMU's conduct "perceptibly impaired" its mission.[103] PETA offers no meaningful allegations on this point.[104]

---

[99] *See, e.g., Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 764 (6th Cir. 2019).

[100] *See* Dkt. 39, pgs. 24–25.

[101] *See, e.g., OCA-Greater Houston v. Tex.*, 867 F.3d 604, 610 (5th Cir. 2017) ("[An] organization can establish standing in its own name if it meets the same standing test that applies to individuals.") (quotations omitted); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) ("Associational standing is a three-part test: (1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members.").

[102] *Supra* pgs. 8–18.

[103] *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Tenth St. Residential Ass'n*, 968 F.3d at 500; *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 239 (5th Cir. 2010); *see also Turlock Irr. Dist. v. F.E.R.C.*, 786 F.3d 18, 24 (D.C. Cir. 2015).

[104] *See* Dkt. 39, ¶¶ 60–83; *El Paso County, Tex. v. Trump*, 982 F.3d 332, 344 (5th Cir. 2020) ("BNHR's single vague, conclusory assertion that the organization had to divert resources is insufficient to establish that the § 2808 construction has 'perceptibly impaired' the organization's ability to carry out its mission."); *Tenth St. Residential Ass'n*, 968 F.3d at 500 (5th Cir. 2020) (finding that "a setback to the organization's abstract social interests" is insufficient to confer organizational standing).

Finally, PETA did not plausibly allege an injury to one of its "members." An organization lacks associational standing "if it fails to adequately allege that there is a threat of injury to any individual member of the association and thus fails to identify even one individual member with standing."[105] In the context of a claim for injunctive relief, "the organization must show an individual who has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct."[106] A "'statistical probability that some of [the organization]'s members are threatened with concrete injury'" is insufficient to confer standing.[107]

PETA did not allege that any of its members ever have, or ever will, post protest comments on TAMU's social media sites. Instead, PETA generally references comments posted by its "employees and supporters," with no indication of whether these individuals are PETA members.[108] PETA's vague allegations should be deemed insufficient to plead a plausible claim to associational standing.[109]

---

[105] *Funeral Consumers All., Inc. v. Serv. Corp. Intern.*, 695 F.3d 330, 344 (5th Cir. 2012) (cleaned up); *but see Hancock County Bd. of Sup'rs v. Ruhr*, 487 Fed. Appx. 189, 198 (5th Cir. 2012) ("We are aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing.") (unpublished).

[106] *Funeral Consumers All., Inc.*, 695 F.3d at 344 (cleaned up).

[107] *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)).

[108] *See, e.g.*, Dkt. 39, ¶¶ 60–83; *Funeral Consumers All.,* 695 F.3d at 344 n.9 (noting that the following are "indicia of membership" for associational standing purposes: "[the association's] members elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs") (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 344–45 (1977)).

[109] *See, e.g., Texas Peace Officers Ass'n v. City of Galveston, Tex.*, 944 F. Supp. 562, 563–64 (S.D. Tex. 1996) ("As it is, Plaintiffs fail to plead the most basic requirement of associational standing—that individual Plaintiffs are members of the organization. Under the most basic logic, an organization cannot sue under an associational standing theory if the aggrieved parties are not members of the organization."); *Iserve All., Inc. v. Nielsen*, No. 3:18-CV-1823-K, 2019 WL 2539240, at *4–5 (N.D. Tex. Feb. 11, 2019) (finding that the association's general allegations that its members were injured insufficient to confer standing); *FPL Food, LLC v. U.S. Dep't of Agric.*, 671 F. Supp. 2d 1339, 1361 (S.D. Ga. 2009) (finding that an association that asserts "the claims of its employees . . . must also overcome the prudential limitation on [third-party] standing").

## II.     PETA is Not Entitled to the *Ex parte Young* Exception Due to the Lack of an Enforcement Connection and an Ongoing Violation of Federal Law.

PETA relies on the *Ex parte Young* exception to overcome TAMU's sovereign immunity. *Ex parte Young* applies to suits against state officials in their official capacities for prospective relief.[110] To qualify for this exception, there must be an "ongoing violation of federal law."[111] The state official being sued must also have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."[112]

PETA is not entitled to the *Ex parte Young* exception as it did not allege a plausible enforcement connection between President Banks and the conduct/policy at issue. TAMU analyzed this issue in the context of standing, and that analysis applies equally here.[113]

PETA is also not entitled to the *Ex parte Young* exception as it did not plausibly allege an ongoing violation of federal law.[114] PETA's requests for declaratory and injunctive relief involve *past* conduct; comments that were deleted or removed from TAMU's social media sites in May 2020. The Supreme Court has repeatedly instructed that sovereign immunity bars a retrospective declaration of a violation of federal law where, as here, there is "no claimed continuing violation of federal law."[115]

---

[110] *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citation omitted).
[111] *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011).
[112] *Morris*, 739 F.3d at 746 (quotations omitted).
[113] *See supra* pgs. 8–11; *City of Austin v. Paxton*, 943 F.3d 993, 1002–03 (5th Cir. 2019); *Tex. Democratic Party*, 961 F.3d at 401; *Air Evac EMS, Inc.*, 851 F.3d at 520.
[114] *See Stewart*, 563 U.S. at 255.
[115] *Green v. Mansour*, 474 U.S. 64, 73 (1985); *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see also Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992) (holding that sovereign immunity precludes an award of injunctive or declaratory relief that is not prospective in effect).

PETA attempts to circumvent this jurisdictional defect by claiming that TAMU is engaging in "ongoing discrimination against PETA's speech on Facebook and YouTube."[116] But this is insufficient. PETA's amended complaint is devoid of plausible facts showing that TAMU is engaged in any ongoing wrongful conduct. Indeed, the only meaningful factual allegations in the amended complaint pertain to the May 2020 graduation events.[117] It is PETA's burden to allege an ongoing violation of law, and PETA has not done so here.[118]

PETA's request for injunctive relief restoring the deleted comments on TAMU's Facebook pages is also insufficient for three reasons.

First, TAMU has shown that it cannot restore the overwhelming majority of PETA's removed comments and that it has already restored the three removed PETA comments within its power to restore. Thus, PETAs restoration injury is not redressable by this Court.[119] This makes the ongoing violation issue a moot point.

Second, PETA did not allege that users are still viewing these over 500-day-old videos and, not only that, reading the posted comments.[120] Lacking such allegations, PETA did not plausibly allege an ongoing injury relating to these unrestored comments.

Finally, viewing TAMU's failure to restore these deleted comments as itself an ongoing violation of federal law makes little sense in this context. PETA's underlying claim is that

---

[116] Dkt. 39, pg. 18.
[117] *See Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2020) (noting that the *Ex parte Young* exception "focus[es] on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past").
[118] *See, e.g., Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020) ("Spec's does not allege that TABC or its officials are currently engaged in [the alleged unlawful] behaviors or that any such actions are imminent. . . . Spec's has therefore failed to allege a claim that falls within the *Ex parte Young* exception[.]").
[119] *Supra* pgs. 16–17.
[120] *See* Dkt. 39, ¶¶ 60–83.

TAMU committed viewpoint- and content-based discrimination when it *deleted* the comments, not when it failed to restore them. The fact that a small portion of deleted comments are not available to future views is a consequence of a past violation, not an ongoing violation itself. Courts have found the *Ex parte Young* exception to be inapplicable in similar circumstances.[121]

In sum, PETA did not show the required enforcement connection and ongoing violation of federal law. As such, PETA is not entitled to the *Ex parte Young* exception to TAMU's sovereign immunity.

## III. PETA's § 1983 Claim Fails as PETA did not Plausibly Allege that a TAMU Policy or Custom was the Moving Force Behind the Constitutional Violation.

To sustain a claim under 42 U.S.C. § 1983, PETA was required to plausibly allege that a TAMU policy or custom was the moving force behind its First Amendment deprivation.[122] PETA did not make this showing.

This issue turns on the complicated relationship between § 1983 and state officials/entities. Section 1983 provides a cause of action against a "person" who, acting "under color of any statute, ordinance, regulation, custom, or usage," deprives another of "any

---

[121] *See, e.g., Drown v. Utah State Off. of Educ.*, 767 F. App'x 679, 685 (10th Cir. 2019) (finding the plaintiff's assertion that "the continued retention on her permanent file of a letter of reprimand that resulted from discrimination" was not an ongoing violation of federal law as it concerned "past harms rather than . . . prospective violations of federal law"); *Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016) ("[E]ven though the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation. Rather, it is an attempt to avoid the obvious fact that the actual violation alleged is a past event that is not itself continuing.") (quotations omitted); *Trudeau v. Univ. of N. Texas*, No. 4:19-CV-00723-RWS, 2020 WL 4745752, at *3 (E.D. Tex. July 14, 2020) ("Because *Ex parte Young* requires an ongoing violation of federal law, it does not apply; continuing harm from a past violation is not enough."), *aff'd sub nom. Trudeau v. Univ. of N. Texas, By & Through its Bd. of Regents*, No. 20-40532, 2021 WL 2908164 (5th Cir. July 9, 2021); *Chase v. Senate of Virginia*, No. 3:21-CV-54, 2021 WL 1936803, at *4 (E.D. Va. May 13, 2021) (finding the *Ex parte Young* exception inapplicable as the plaintiff's alleged injuries—the loss of seniority and reputational harm—were "ongoing *consequences*" of a past violation, "not ongoing violations" themselves).

[122] We assume PETA brought a § 1983 claim as it asserts a claim for attorney's fees under 42 U.S.C. § 1988(b). *See* Dkt. 39, pg. 25 (containing a request for attorney's fees under "42 U.S.C. § 1998(b)," a statute that does not exist and is presumably a typo).

23

rights privileges, or immunities secured by the Constitution and laws."[123] Neither a state entity nor a state official sued in his official capacity for damages are "persons" under § 1983, and thus they cannot be sued under this statute.[124] But, when a state official is sued in his official capacity for prospective relief, courts consider him to be "a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"[125] Although the state official is considered a "person" under this legal fiction, the real person in interest is the state itself.[126] As the Supreme Court explained in *Hafer v. Melo*: "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'"[127]

PETA's suit implicates TAMU's social media policy, but PETA did not claim that this policy is itself unconstitutional. Rather, PETA complains about the way this policy was applied—that some unidentified TAMU employees used this policy to commit viewpoint- and content-based discrimination against PETA. As the Fifth Circuit explained in *Gonzales v. Ysleta Independent School Dist.*: "[W]here . . . a policy in some sense causes, but does not compel, a

---

[123] 42 U.S.C. § 1983.

[124] *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

[125] *Id.* at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

[126] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[127] *See, e.g., id.* (quoting *Graham*, 473 U.S. at 166) (quotations omitted); *Johnson v. Rodriguez*, 110 F.3d 299, 312 (5th Cir. 1997) ("Because this is an official capacity lawsuit, it is a condition precedent to liability under section 1983 that the challenged conduct of the individual Board members be tied to an official Board custom or policy, formal or informal."); *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016); *Hay v. Thaler*, No. CIV.A. H-09-4075, 2011 WL 1237940, at *8 (S.D. Tex. Mar. 7, 2011), *aff'd*, 470 F. App'x 411 (5th Cir. 2012); *Rushing v. Bd. of Sup'rs of Univ. of Louisiana Sys.*, No. CIV. A. 06-623-C, 2008 WL 4200292, at *4 (M.D. La. Sept. 11, 2008); *see also Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 31 (2010) (reaffirming that § 1983's "'policy or custom' requirement . . . applies when plaintiffs seek prospective relief, such as an injunction or a declaratory judgment"); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (identifying § 1983's causation element as requiring the policy or custom to be the "moving force" behind the alleged violation of constitutional rights).

constitutional violation, plaintiffs must establish that the particular harm-producing deficiency resulted from conscious choice, that is, they must supply proof that the policymakers deliberately chose measures which would prove inadequate."[128] Thus, PETA must show that TAMU's policymakers were "deliberately indifferent" towards PETA's constitutional rights.[129]

"The deliberate indifference standard is a high one"; the "state actor must know of and disregard an excessive risk" to the plaintiff's constitutional rights.[130] PETA made no meaningful allegations on this point. Thus, PETA's § 1983 claim fails as it did not plausibly allege a harm fairly attributable to a TAMU policy or custom.

## CONCLUSION

For the reasons set forth above, PETA's claims are nonjusticiable and inadequately pled. This case should be dismissed in its entirety.

Date: October 29, 2021                Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

---

[128] 996 F.2d 745, 755 (5th Cir. 1993) (cleaned up).
[129] *Id.* at 755–60.
[130] *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (cleaned up).

/s/ Todd Dickerson
Todd Dickerson
Attorney-in-charge
Texas Bar No. 24118368
Southern District ID No. 3544329
Office of the Attorney General
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
Todd.Dickerson@oag.texas.gov
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that, on October 29, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users, including Plaintiff's counsel.

/s/ Todd A. Dickerson
TODD A. DICKERSON
Assistant Attorney General

26