UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PEOPLE FOR THE ETHICAL TREATMENT
OF ANIMALS, INC.,

                    Plaintiff,

          v.

M. KATHERINE BANKS,

                    Defendant.

Civil Action No. 4:20-cv-02913

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

CHRISTOPHER W. ROTHFELDER
Texas State Bar No. 2408470
Southern District I.D. 2449594
crothfelder@rothfelderfalick.com
Rothfelder & Falick, L.L.P.
1201 Louisiana St., Suite 550
Houston, TX 77002
713.220.2288 telephone

Local Counsel and Attorney-In-Charge
for Plaintiff People for the Ethical
Treatment of Animals, Inc.

MUKUND RATHI*
DAVID GREENE*
NAOMI GILENS*
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
415.436.9333 telephone
415.436.9993 facsimile
mukund@eff.org, davidg@eff.org,
naomi@eff.org

* admitted *pro hac vice*

Attorneys for Plaintiff People for the
Ethical Treatment of Animals, Inc.

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ...................................................................1

TABLE OF AUTHORITIES ..............................................................3

INTRODUCTION ............................................................................7

FACTUAL BACKGROUND..............................................................7

ARGUMENT..................................................................................11

I.   This Court has jurisdiction under *Ex parte Young* to hear PETA's request for injunctive relief against the President of TAMU for ongoing viewpoint discrimination ...............................................................11

    a.   PETA alleges that TAMU is committing an ongoing violation of federal law.............................................................................11

    b.   PETA seeks prospective relief.........................................14

    c.   The President of TAMU is a proper defendant under *Ex parte Young* as to TAMU's ongoing discrimination against PETA ...............................................14

II.   PETA has standing to challenge TAMU's ongoing viewpoint discrimination ..........18

    a.   PETA alleges an injury in fact—the violation of its First Amendment rights ...........................................................18

        i.   PETA alleges that it intends to continue its animal rights campaign against TAMU's experiments on dogs .......................................18

        ii.   PETA alleges that there is a credible threat that TAMU will censor PETA's speech ...............................................20

        iii.   TAMU's censorship directly injures PETA ...............21

    b.   PETA alleges a second injury-in-fact—TAMU is censoring others' speech that PETA has an interest in receiving.............................................22

    c.   PETA alleges that TAMU's censorship is fairly traceable to the President of TAMU ...............................................22

d.   PETA alleges that a prospective injunction would likely redress its injuries...................................................................................................23

III.   PETA states valid claims under 42 U.S.C. § 1983 and under *Ex parte Young* ..........25

a.   PETA states a valid claim under section 1983 ....................................25

b.   PETA states a valid equitable claim under *Ex parte Young* ..............................27

CONCLUSION.........................................................................................27

CERTIFICATE OF SERVICE ........................................................................30

# TABLE OF AUTHORITIES

Page

**Cases**

*ACORN v. Fowler*,
178 F.3d 350 (5th Cir. 1999)..................................................................................18, 21

*Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*,
851 F.3d 507 (5th Cir. 2017...............................................................................14, 15, 16

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015)...................................................................................................27

*Babbitt v. United Farm Workers Nat. Union*,
442 U.S. 289 (1979)...............................................................................................17, 19

*Barilla v. City of Houston*,
13 F.4th 427 (5th Cir. 2021) .......................................................................................20

*Bennett v. Spear*,
520 U.S. 154 (1997)...................................................................................................18

*California v. Texas*,
141 S. Ct. 2104 (2021) ...........................................................................................17, 22

*Coal. to Defend Affirmative Action v. Brown*,
674 F.3d 1128 (9th Cir. 2012)......................................................................................15

*Consumer Data Indus. Ass'n v. King*,
678 F.3d 898 (10th Cir. 2012).....................................................................................24

*Davison v. Randall*,
912 F.3d 666 (4th Cir. 2019)......................................................................................24

*Doe I. v. Landry*,
909 F.3d 99 (5th Cir. 2018).........................................................................................21

*Elend v. Basham*,
471 F.3d 1199 (11th Cir. 2006).....................................................................................19

*Elrod v Burns*,
427 U.S. 347 (1976)...................................................................................................22

*Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*,
968 F.3d 357 (5th Cir. 2020).......................................................................................22

*Ex parte Young*,
    209 U.S. 123 (1908) ............................................................................................. *passim*

*Frank v. Gaos*,
    139 S. Ct. 1041 (2019) ................................................................................................25

*Freedom From Religion Found. v. Abbott*,
    955 F.3d 417 (5th Cir. 2020) ......................................................................................12

*Green Valley Special Util. Dist. v. City of Schertz, Texas*,
    969 F.3d 460 (5th Cir. 2020) ......................................................................................27

*Hafer v. Melo*,
    502 U.S. 21 (1991) ...............................................................................................16, 26

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .............................................................................................18, 21

*Haverkamp v. Linthicum*,
    6 F.4th 662 (5th Cir. 2021) .........................................................................................17

*Henschen v. City of Houston*,
    959 F.2d 584 (5th Cir. 1992) ......................................................................................19

*Holder v.* Humanitarian Law Project,
    561 U.S. 1 (2010) ...............................................................................................18, 19

*James v. Texas Collin Cty.*,
    535 F.3d 365 (5th Cir. 2008) ......................................................................................25

*Justice v. Hosemann*,
    771 F.3d 285 (5th Cir. 2014) ......................................................................................23

*K.P. v. LeBlanc*,
    627 F.3d 115 (5th Cir. 2010) .........................................................................14, 15, 16

*Kentucky v. Graham*,
    473 U.S. 159 (1985) .............................................................................................25, 26

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
    302 F. Supp. 3d 541 (S.D.N.Y. 2018),
    *affirmed on appeal*, 928 F.3d 226 (2d Cir. 2019),
    *vacated on other grounds*, 141 S. Ct. 1220 (2021) .................................................22, 24

*Los Angeles Cty., Cal. v. Humphries*,
    562 U.S. 29 (2010) ......................................................................................................26

*Machete Prods., L.L.C. v. Page*,
    809 F.3d 281 (5th Cir. 2015)..........................................................................19

*Massachusetts v. E.P.A.*,
    549 U.S. 497 (2007).......................................................................................24

*Matal v. Tam*,
    137 S. Ct. 1744 (2017)...................................................................................11

*Monell v. New York City Dept. of Social Servs.*,
    436 U.S. 658 (1978).......................................................................................26

*Nelson v. Univ. of Texas at Dallas*,
    535 F.3d 318 (5th Cir. 2008)..........................................................................15

*NiGen Biotech, L.L.C. v. Paxton*,
    804 F.3d 389 (5th Cir. 2015).....................................................................17, 23

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001).................................................................14, 15, 16

*Pennell v. City of San Jose*,
    485 U.S. 1 (1988)...........................................................................................18

*Prison Legal News v. Livingston*,
    683 F.3d 201 (5th Cir. 2012)..........................................................................21

*Randolph v. Rodgers*,
    253 F.3d 342 (8th Cir. 2001)..........................................................................16

*Robinson v. Hunt Cty.*,
    921 F.3d 440 (5th Cir. 2019).....................................................................24, 27

*S.E.C. v. Forex Asset Mgmt. LLC*,
    242 F.3d 325 (5th Cir. 2001)..........................................................................25

*Saltz v. Tennessee Dep't of Emp. Sec.*,
    976 F.2d 966 (5th Cir. 1992).....................................................................14, 26

*Spec's Fam. Partners, Ltd. v. Nettles*,
    972 F.3d 671 (5th Cir. 2020).....................................................................12, 13

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020).....................................................................20, 23

*Stanley v. Georgia*,
    394 U.S. 557 (1969)..................................................................................13, 22

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)..........................................................................................23

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)..........................................................................18, 19, 20

*United States v. SCRAP*,
    412 U.S. 669 (1973)........................................................................................21

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
    535 U.S. 635 (2002)..................................................................................11, 14

*Whole Woman's Health v. Jackson*,
    141 S. Ct. 2494 (2021)....................................................................................15

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989)....................................................................................25, 26

*Williams On Behalf of J.E. v. Reeves*,
    954 F.3d 729 (5th Cir. 2020)...........................................................................13

**Statutes**

42 U.S.C. § 1983........................................................................................ *passim*

## INTRODUCTION

Texas A&M University ("TAMU") unconstitutionally deleted one out of every four of PETA's comments on its May 2020 graduation ceremony livestreams. TAMU now attempts to justify those actions by characterizing PETA's expressed viewpoints about TAMU's experiments on dogs as "spam," effectively admitting to discrimination against those views. TAMU is applying its social media policies in a viewpoint discriminatory manner and has not restored the speech it censored on the graduation ceremonies' public forums. Far from disavowing its censorship, TAMU has doubled down on it.

PETA seeks injunctive relief to stop TAMU's viewpoint discrimination against PETA, an ongoing violation of the First Amendment.

## FACTUAL BACKGROUND

PETA has a long-standing campaign against TAMU's experiments on dogs bred with canine Duchenne muscular dystrophy. First Am. Compl. (FAC) at ¶¶ 48-50. Since 2016, PETA has been sending letters to officials, protesting, and appealing to audiences on social media, including on TAMU's YouTube and Facebook pages. *Id.* at ¶¶ 20-26, 33-42, 48-50. Since at least December 2017, TAMU has been discriminating against PETA's campaign and censoring PETA's speech by filtering and deleting PETA's comments from its social media pages. *Id*. at ¶¶ 51-54. In 2018, PETA sued the previous President of TAMU over this viewpoint discrimination and the parties ultimately settled. *Id*. at ¶¶ 55-59. The President of TAMU agreed that TAMU would not exercise

viewpoint discrimination against PETA, and PETA retained the right to sue if TAMU's discrimination continued. *Id*.

TAMU's continuing viewpoint discrimination became clear in May 2020, during its online graduation ceremonies. *Id*. at ¶¶ 60-83. TAMU livestreamed the ceremonies on its Facebook and YouTube pages. *Id*. at ¶¶ 60, 68, 76. On both platforms, TAMU provided forums for members of its community and the public to express their thoughts. *Id*. at ¶¶ 20-26, 33-42. PETA and its employees and supporters commented in TAMU's graduation forums. *Id*. at ¶¶ 60-62, 69-70, 79. They expressed support for the students who were graduating and urged them to help end TAMU's experiments on dogs. *Id*. TAMU deleted over 100 of these comments, or approximately every one in four of them. *Id*.

Specifically, on May 6, 2020, the TAMU College of Veterinary Medicine & Biomedical Sciences held an online graduation ceremony on its Facebook page. *Id*. at ¶ 60. The celebration was livestreamed for one hour and twenty-five minutes and during that time was viewed 11,000 times and commented on more than 200 times. *Id*. PETA employees and supporters posted approximately 80 comments and TAMU deleted approximately 54—well over half—of them. *Id*. at ¶ 61. The censored speech included the following:

- "By now the graduating students should realize that TAMU's experiments on dogs are cruel and pointless. There are humane and effective non-animal research methods. Spend your time on those, please."

8

- "If you care about animals, class of 2020, please be the ones to shut down TAMU's abusive and deadly dog lab."

- "TAMU needs to shut down its cruel dog labs! I hope these graduates will usher in a new, more compassionate era!"

*Id*.

On May 8, 2020, TAMU held an online university-wide graduation ceremony on its Facebook page. *Id*. at ¶ 68. TAMU livestreamed the ceremony for more than seven hours and during that time it was viewed more than 480,000 times and commented on more than 4,700 times. *Id*. at ¶ 69. PETA employees posted approximately 413 comments and TAMU deleted approximately 64 of them. *Id*. at ¶¶ 69-70. The censored speech included:

- "Proud of the grads! Disgraced at the administration for supporting the MD dog laboratory on campus. PETA.org/TAMU."

- "Happy for all those who are graduating and moving on. Sadly, the dogs used for cruel experiments in TAMU's labs are not allowed to leave. https://investigations.peta.org/french-dog-laboratory.../"

- "Congrats, graduates. Now please help us in urging TAMU to stop their cruel experiments on animals!"

*Id*.

On May 8, 2020, TAMU also livestreamed the university-wide graduation ceremony on its YouTube channel and during that time it was viewed more than 45,000 times. *Id*. at ¶¶ 76-77. PETA employees and supporters posted approximately 70

comments and TAMU deleted approximately 19 of them. *Id*. at ¶ 79. The censored speech included:

- "I wonder which graduate will help shut down the dog lab?"
- "Congrats to the Graduates! But when will TAMU stop cruelly experimenting on DOGS and send them all to homes?"

*Id*.

Videos of and forums for the Veterinary College and university-wide graduation ceremonies—"life-defining event[s]," as TAMU puts it, Def. Mot. to Dismiss (MTD) at 1—remain online and available for the TAMU community and the public to re-live the events. FAC at ¶¶ 65, 73. PETA wishes for its speech to be part of that re-living, just as it should have been during the livestream. *Id*. PETA also wishes to be able to hear other supporters of animal rights who participated in the graduation public forums and whose speech was also censored. *Id*. at ¶¶ 67, 75, 83.

Today, PETA continues its campaign to end TAMU's experiments on dogs, during which PETA wishes to speak in TAMU's online public forums. *Id*. at ¶¶ 66, 74, 82. PETA wishes to post comments during large or significant TAMU events with a forum for discussion. *Id*. TAMU's continuing discrimination against PETA's viewpoint hampers PETA's advocacy. *Id*.

## ARGUMENT

**I.** **This Court has jurisdiction under *Ex parte Young* to hear PETA's request for injunctive relief against the President of TAMU for ongoing viewpoint discrimination.**

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal citation and quotation omitted); *see Ex parte Young*, 209 U.S. 123 (1908). A court does not consider the substantive merits of the allegation of the violation of federal law. *See Verizon*, 535 U.S. at 646.

PETA meets this standard: it alleges a "violation of federal law"—viewpoint discrimination that violates the First Amendment, *see Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017)—that is "ongoing" or "continuing"—TAMU's discrimination against PETA's animal rights campaign continues for a fifth year—and PETA seeks "prospective" relief in the form of an injunction prohibiting TAMU's censorship on social media, including restoring PETA's comments deleted from the May 2020 graduation forums.

### a. PETA alleges that TAMU is committing an ongoing violation of federal law.

PETA alleges that TAMU is violating the First Amendment by discriminatorily deleting PETA's comments advocating for animal rights. *See* FAC at ¶¶ 60-62, 69-70, 79, 85. PETA sufficiently alleges that TAMU's discrimination is ongoing. *See id.* at ¶¶ 65-67, 73-75, 82-83. In settling previous litigation, PETA retained the right to sue if TAMU

engaged in future viewpoint discrimination against PETA. *Id*. at ¶¶ 57, 59. As alleged, TAMU has done so.

PETA is a well-known critic of TAMU, has been campaigning against TAMU's animal experimentation for years, and intends to continue doing so. Specifically, PETA "wishes to continue posting comments" about its animal rights campaign in TAMU's online public forums. FAC at ¶¶ 66, 74, 82.[1]

TAMU's discrimination is ongoing, or at the very least given PETA's plan to continue its campaign, is "imminent." *See Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020). By repeatedly categorizing PETA's expressions of its views as "spam," the equivalent of junk mail, TAMU effectively concedes that it continues to believe that PETA's views about TAMU's experiments on dogs are invalid, and that it will continue censoring them. *See* MTD at 1, 4, 5. The Fifth Circuit exercised jurisdiction and indeed stopped a similar plan by the government to reject an organization's application to display an exhibit in the state capitol building. *Freedom From Religion Found. v. Abbott,* 955 F.3d 417, 423–25 (5th Cir. 2020). In that case, the government had responded to the plaintiff organization's application by "stating that 'any application to display the same exhibit which was removed last year will be denied for failure to satisfy the public purpose requirement.'" *Id*. at 425-26. The government's response "established the ongoing nature of the violation." *Id*.

---

[1] PETA does not and should not have to reveal details of its future advocacy plans to invoke this Court's jurisdiction to consider TAMU's ongoing viewpoint discrimination. This would force PETA to hand over its campaign details to the very government that is discriminating against it and is the target of its advocacy campaign.

In addition, TAMU today has not restored the comments by PETA employees and supporters that TAMU deleted from the May 2020 graduation public forums. FAC at ¶¶ 65, 73. This violates PETA's rights both to speak and to receive information. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969). PETA wishes to continue engaging with and reading these comments. FAC at ¶¶ 67, 75, 83. PETA has the right to be heard by members the TAMU community and the public who will revisit these "life-defining event[s]." *See* MTD at 1.

The Fifth Circuit has held that "the fact that a current violation can be traced to a past action does not bar relief under *Ex parte Young*." *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 737-38 (5th Cir. 2020). This Court must reject TAMU's argument, relying on out-of-circuit cases, that "deleted comments [not being] available to future views is a consequence of a past violation, not an ongoing violation itself." *See* MTD at 23 & n.121. Just as it has been for the previous four years, TAMU is *today* depriving PETA its First Amendment right to participate in TAMU's public forums. That deprivation includes TAMU's failure to restore PETA's comments deleted from the May 2020 graduation forums.

By contrast, in *Spec's*, it was "undisputed that the investigation and [government administrative] proceedings forming the basis of the allegations in th[at] case [were] completed." *See* 972 F.3d at 681. There, the investigation "ended in February 2016" and the administrative judges "ruled in [plaintiff's] favor" except for one "warning." *Id.* at 675. Here, TAMU's viewpoint discrimination against PETA's animal rights campaign is continuing into its fifth year without being "completed."

13

**b. PETA seeks prospective relief.**

Finally, PETA seeks prospective relief through a declaration and injunction against TAMU's ongoing viewpoint discrimination. FAC at 25; *Saltz v. Tennessee Dep't of Emp. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). *See also Verizon*, 535 U.S. at 646 ("Insofar as the exposure of the State is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction.").

**c. The President of TAMU is a proper defendant under *Ex parte Young* as to TAMU's ongoing discrimination against PETA.**

M. Katherine Banks, the President of TAMU, "has authority over all TAMU policies and *practices*." FAC at ¶ 5 (emphasis added). Therefore, "by virtue of [her] office," she has "some connection with the enforcement" of TAMU's viewpoint discrimination against PETA, a well-known and longtime critic, and is a proper defendant under *Ex parte Young*. *See* 209 U.S. at 157.

The analysis of whether the President of TAMU is a proper defendant "turns on the complaint's context—including the challenged state law and defendants—to determine whether 'the state officer, by virtue of [her] office, has some connection with the enforcement of the act.'" *See Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017) (quoting *Young*, 209 U.S. at 157). Because of "subtle distinctions in the complaint[s]," the Fifth Circuit found jurisdiction under *Young* over one lawsuit, *K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010), but not another lawsuit, *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (*en banc*), against "the same Louisiana abortion statute." *Air Evac*, 851 F.3d at 518-19. The allegedly

unconstitutional abortion statute at issue in *K.P.* and *Okpalobi* "provided for enforcement through private actions, not public officials," but the *Okpalobi* plaintiffs improperly sued the state attorney general. *Id.* at 518. *See also Okpalobi*, 244 F.3d at 421 ("Here, there is no act, no threat to act, *and no ability to act*.") (emphasis added); *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (denying preliminary injunctive relief under *Young* against state judges and noting that the state has represented it does not "possess the authority to enforce the [challenged state] law"). The *K.P.* plaintiffs, instead, properly sued "state-regulatory-board members" who, unlike other public officials, "had a specific means through which to apply the abortion statute." *Air Evac*, 851 F.3d at 518-19.

Here, PETA's "complaint's context . . . includ[es] the challenged state [practice]" of viewpoint discrimination against a well-known critic's advocacy campaign at major events, such as graduation ceremonies. *See Air Evac*, 851 F.3d at 519.  "By virtue of [her] office," the President of TAMU has "authority over all policies and *practices*" of the university, and thus has "some connection with the enforcement of" TAMU's discrimination against PETA. *See* FAC at ¶ 5 (emphasis added); *Air Evac*, 851 F.3d at 519. *See also Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 319 (5th Cir. 2008) (finding jurisdiction under *Young* over lawsuit against university president alleged to be the "administrative head" of the university); *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (finding jurisdiction under *Young* over lawsuit against university president because "[a]t the University of California, the buck stops with [President] Yudof").

Indeed, PETA settled the previous lawsuit on the same issue before this Court with the previous President of TAMU, whose attorney's signature is on the settlement. FAC at ¶¶ 55-59. Banks, both as the current president presiding over the ongoing censorship, and as the successor to the previous president who presided over the past censorship, is the proper defendant. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State. Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation.") (internal citations omitted); *Randolph v. Rodgers*, 253 F.3d 342, 346 n.7 (8th Cir. 2001) ("An *Ex parte Young* injunction against [the state official] in her official capacity would be binding upon her successor if [the state official] were to leave her position.").

The government cannot overwrite the "complaint's context" by casting the "challenged state [practice]" of viewpoint discrimination as involving "low-level issues" and by introducing new facts. *See Air Evac*, 851 F.3d at 519; MTD at 11. As alleged, TAMU's experiments on dogs are part of its unique and "extensive record of scientific research funded through U.S. government grants and organizations." FAC at ¶ 5. PETA is campaigning against high-level policy at major university events. And regardless of the nature of the practice, the President of TAMU has authority over all TAMU practices, unlike the state attorney general in *Okpalobi*, who did not have any enforcement authority, but like the public officials in *K.P.*, who did.

The President of TAMU's universal authority is thus also unlike the prison health services director in *Haverkamp v. Linthicum*, who was not a proper defendant under

*Young* because she was not alleged to have any enforcement authority over three specific medical and commissary issues with the plaintiff, an individual incarcerated person. *See* 6 F.4th 662, 671 (5th Cir. 2021). The *Haverkamp* plaintiff's complaint unsurprisingly contained "no allegation plausibly linking [the director] with the challenged decisions" because it only named her in a different, non-directorial, capacity. *See Haverkamp*, 6 F.4th at 671. More generally, *Haverkamp* emphasized that government officials have varied powers: "formulating and promulgating the policy . . . is not the power to enforce." *Id.* at 670. Even the Governor's "statutory authority . . . to issue, amend, or rescind an Executive order is not the power to enforce." *Id*.

The government's remaining cases, MTD at 10 n.51, do not actually address *Ex parte Young*; they are distinguishable; or they do not bind this Court, unlike the authority provided above. *See, e.g., California v. Texas*, 141 S. Ct. 2104 (2021) (concerning traceability requirement under Article III standing without reference to *Young*); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) (concerning injury requirement under Article III standing without reference to *Young*). *Young*'s standards are "not identical" to Article III standing. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 n.5 (5th Cir. 2015).

This Court has jurisdiction over this viewpoint discrimination case under *Ex parte Young*. The unacceptable alternative is that a state government can discriminate against an advocacy campaign at every step, violating the First Amendment, but avoid federal court jurisdiction because the advocate cannot reveal the future details of their campaign.

II.     **PETA has standing to challenge TAMU's ongoing viewpoint discrimination.**

PETA has standing as an organization "if it meets the same standing test that applies to individuals." *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). PETA must allege that it "has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *See Bennett v. Spear*, 520 U.S. 154, 162 (1997) (internal quotations and citation omitted); *ACORN v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999). Since "standing is challenged on the basis of the pleadings," this Court must "accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party." *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (internal quotations and citation omitted).

a.  **PETA alleges an injury in fact—the violation of its First Amendment rights.**

PETA alleges an injury in fact in its request for an injunction because it alleges an intention to engage in speech protected by the First Amendment and alleges there is a credible threat of future government action against its speech. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

i.  **PETA alleges that it intends to continue its animal rights campaign against TAMU's experiments on dogs.**

PETA alleges an intention to engage in protected speech. PETA need not reveal the details of its future advocacy plans. Rather, since PETA has engaged in this speech in the past, it need only allege an intention to engage in similar speech in the future. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 15–16 (2010) (plaintiffs had standing

where they previously provided support to groups designated as terrorist organizations and alleged they "would provide similar support [to the same groups] again if the statute's allegedly unconstitutional bar were lifted"); *Babbitt*, 442 U.S. at 301 (plaintiff had standing where they "actively engaged in consumer publicity campaigns in the past" and "alleged in their complaint an intention to continue"). Like the organizational plaintiffs in *Holder* and *Babbitt,* PETA began its advocacy campaign in the past, *see* FAC ¶¶ 49, 51-54, 60-62, 69-70, 79, and has alleged an intention to continue, *see id.* at ¶¶ 49, 66-67, 74-75, 82-83.

The pre-*Driehaus* cases cited by TAMU are distinguishable because those plaintiffs either did not allege plans to speak in the future, s*ee Henschen v. City of Houston*, 959 F.2d 584, 588 (5th Cir. 1992) ("[Plaintiffs] formed a loose confederation of community activists . . . After staging their demonstration the group wholly dissolved."); *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (the facts of "the success of the first *Machete* film" and the director's "reputation for bringing film projects to Texas" are not actual allegations of "plans to produce another film in the *Machete* franchise"); or they alleged "plans" that were entirely conjectural, *see Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (plaintiffs "fail[] to provide any limitation on the universe of possibilities of when or where or how such a protest [against President Bush's appearances] might occur" and "it is entirely conjectural that President Bush would return").

ii. **PETA alleges that there is a credible threat that TAMU will censor PETA's speech.**

The threat of future government action against PETA's protected speech need not be certain—PETA has standing to seek an injunction if the threat is not "imaginary or wholly speculative." *Driehaus*, 573 U.S. at 160. When dealing with ongoing speech restrictions at the motion-to-dismiss stage, courts "assume a credible threat of prosecution in the absence of compelling contrary evidence" in the record. *Barilla v. City of Houston*, 13 F.4th 427, 432 (5th Cir. 2021) (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020)).

The threat of TAMU's future enforcement actions against PETA's speech is "obvious[]" because of TAMU's "history of past enforcement" and because it "ha[s] not disavowed enforcement" against similar speech in the future. *See Driehaus*, 573 U.S. at 164-65. *See also Speech First* , 979 F.3d at 335 ("Past enforcement of speech-related policies can assure standing" in First Amendment challenge to University of Texas policies governing speech). For years, TAMU has censored PETA's criticism of its experiments on dogs on its social media pages. FAC at ¶¶ 51-54, 60-83. And far from disavowing future censorship, TAMU doubles down and categorizes PETA's expressed views as "spam." MTD at 1, 4, 5. TAMU's years of discrimination, PETA's intent to continue its campaign, and TAMU's doubling down make it far from "imaginary or wholly speculative" that TAMU will continue to censor PETA's speech. *Driehaus*, 573 U.S. at 160.

### iii. TAMU's censorship directly injures PETA.

PETA alleges a direct injury to its constitutional right to speak by TAMU's censorship and failure to restore the comments it deleted. *See Prison Legal News v. Livingston*, 683 F.3d 201, 212–13 (5th Cir. 2012). "Government interference" with one's attempt to speak or receive the speech of others "unquestionably satisfies Article III's injury-in-fact requirement." *Id.* at 212.

PETA does not allege a "chilling effect" injury as a "yet-unharmed" plaintiff, *see Doe I. v. Landry*, 909 F.3d 99, 114 (5th Cir. 2018), nor an indirect injury, like frustration of mission or diversion of resources, *Havens*, 455 U.S. at 379, which TAMU focuses on.[2]

This Court should soundly reject TAMU's suggestion that PETA did not suffer an injury-in-fact because, in TAMU's view, it only censored PETA a little bit.

First, "the injury in fact requirement under Article III is qualitative, not quantitative." *ACORN*, 178 F.3d at 357-58. "[T]he Supreme Court expressly rejected the argument that the injury in fact requirement was limited to 'significant[ ]' injuries, noting that it has upheld the standing of plaintiffs with 'no more at stake in the outcome of an action than a fraction of a vote, a $5 fine and costs, and a $1.50 poll tax.'" *Id.* (quoting *United States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973)).

Second, even if the quantum of injury did matter for the purposes of standing, there is no such thing as a trifling First Amendment injury. "The loss of First Amendment

---

[2] Nor does PETA assert associational standing on behalf of its members. *See* MTD at 19-20.

freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

### b. PETA alleges a second injury-in-fact—TAMU is censoring others' speech that PETA has an interest in receiving.

PETA is also injured by TAMU's censorship of and failure to restore comments by PETA supporters that PETA wishes to read. FAC ¶¶ 60-62, 69-70, 79. An organization's "desire to read comments" that the government prevents from being published "is a cognizable injury for standing purposes." *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 563 (S.D.N.Y. 2018), *affirmed on appeal*, 928 F.3d 226, 233 n.3 (organization's inability to read censored comments was sufficient to establish standing), *vacated on other grounds*, 141 S. Ct. 1220 (2021) (finding case about President Trump's Twitter page moot because Trump was no longer in office and Twitter had removed his profile entirely). *See also Stanley v. Georgia*, 394 U.S. 557, 564 (1969).

### c. PETA alleges that TAMU's censorship is fairly traceable to the President of TAMU.

PETA's injuries are fairly traceable to Defendant Banks, the President of TAMU, who "has authority over all TAMU policies and practices." FAC at ¶ 5. In connecting its injuries and the President of TAMU, PETA need allege only "something more than conjecture . . . but less than certainty." *See Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 368 (5th Cir. 2020). Here, the President of TAMU has universal authority and enforcement power. FAC at ¶ 5; *cf. California*, 141 S. Ct. at 2114 ("Their problem lies in the fact that the statutory provision . . . has no means of enforcement.").

PETA settled the previous lawsuit on the same issue before this Court with the previous President of TAMU, whose attorney's signature is on the settlement. *Id*. at ¶¶ 55-59. Moreover, PETA, a well-known critic of TAMU, alleges years of viewpoint discrimination against its animal rights campaign, including at major events like graduation ceremonies. FAC at ¶¶ 51-54, 60-83. The President of TAMU naturally has a role in this debate over TAMU's experiments on dogs, which are part of TAMU's unique and extensive government-funded scientific research. FAC at ¶ 5.

### d.  PETA alleges that a prospective injunction would likely redress its injuries.

Since PETA's "complaint alleges a continuing violation or the imminence of a future violation, [its] prayer for injunctive relief satisfies redressability." *See NiGen Biotech, L.L.C.*, 804 F.3d at 397 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998)). If this Court were to enjoin TAMU from its ongoing viewpoint discrimination and censorship on its social media pages, PETA would be able to fully engage in its animal rights campaign against TAMU's experiments on dogs. *See Speech First*, 979 F.3d at 338 ("[t]he causation and redressability prongs of the standing inquiry are easily satisfied" because the university's speech restrictions caused the injury and the injury could be redressed by enjoining enforcement of those policies) (internal citations and quotations omitted); *Justice v. Hosemann*, 771 F.3d 285, 292 n.6 (5th Cir. 2014) (holding that the "'traceability' and 'redressability' elements of the standing requirements . . . [were] clearly met" where plaintiffs sought an injunction preventing the Mississippi attorney general and secretary of state from enforcing an allegedly unconstitutional speech restriction against them).

Moreover, PETA's injury as to the deleted comments could be redressed by ordering the restoration of the comments in a number of different ways, the specifics of which need not be decided at this stage of the litigation. The injury could thus be redressed even if all comments could not be restored to the Facebook page exactly as they should have appeared.[3] *See Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 903 (10th Cir. 2012) ("[A] favorable decision would relieve [plaintiff's] problem 'to some extent,' which is all the law requires.") (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 526 (2007)). PETA retains records of comments deleted but not restored, and they could be posted somewhere on TAMU's YouTube and Facebook public forums to redress PETA's injury.

PETA thus has standing because it alleges injuries by TAMU's viewpoint discrimination, that censorship is fairly traceable to the President of TAMU, and a prospective injunction would redress PETA's injuries. This case, like others in the Fifth Circuit and other courts, seeks relief from the government's removal of comments from online forums on social media platforms, and should proceed to the merits. *See Robinson v. Hunt Cty.*, 921 F.3d 440, 447-48 (5th Cir. 2019); *Davison v. Randall*, 912 F.3d 666, 688 (4th Cir. 2019); *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 239 (2d Cir. 2019), *reh'g* en banc *denied*, 953 F.3d 216 (2d Cir. 2020), *vacated on other grounds*, 141 S. Ct. 1220 (2021). These courts found Article III standing even if

---

[3] Even though they are immaterial, this Court should not credit the new facts that TAMU attempts to introduce at the motion to dismiss stage that it cannot restore these comments directly to Facebook. *See* MTD at 17.

they didn't discuss it, as federal courts must assure themselves of plaintiffs' standing even if the parties don't raise it. *See Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019); *S.E.C. v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 328 (5th Cir. 2001).

## III.    PETA states valid claims under 42 U.S.C. § 1983 and under *Ex parte Young*.

### a.    PETA states a valid claim under section 1983.

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (internal citation omitted).

Even if section 1983 is not specified in the complaint, PETA alleges (1) ongoing viewpoint discrimination against it in violation of the First Amendment and that (2) the President of TAMU has authority over all policies and practices, including this one. *See also* FAC at 25 (seeking costs under statute that authorizes fees recovery for certain actions, including under section 1983); MTD at 23 n.122 (acknowledging that PETA seeks to bring a section 1983 claim). The President of TAMU is a "person" under section 1983 because "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)) (also citing *Ex parte Young*, 209 U.S. at 159-160) (internal quotations omitted). *Young* "holds that acts by state officials which are contrary to federal law cannot have been authorized or be ratified by the state; and suits seeking to enjoin such wrongful and

unauthorized acts are not suits against the state and a federal courts' injunction against such wrongful acts is not a judgment against the state itself." *Saltz*, 976 F.2d at 968. And as discussed above, PETA has standing to seek injunctive relief against an ongoing constitutional injury traceable to the President of TAMU. *See supra* Sec. II.

PETA need not allege that any government policy or custom is at issue to seek prospective relief—this requirement applies only to "a plaintiff seeking to recover on a *damages* judgment in an official-capacity suit." *Graham*, 473 U.S. at 166 (emphasis added). A plaintiff there "must look to the government entity itself," *id*., because the "real party in interest in an official-capacity suit is the governmental entity," *Hafer*, 502 U.S. at 25—therefore, the entity's "policy or custom must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (internal quotations omitted).

Official-capacity suits for *prospective relief*, like PETA's request for an injunction to stop TAMU's viewpoint discrimination, need not allege that the ongoing violation is due to a policy or custom. As noted above, official-capacity defendants in suits for prospective relief are not treated as the state, but as "persons" under section 1983. *Will*, 491 U.S. at 71 n.10. By contrast, official-capacity defendants in damages suits are not "persons." *Id*. at 71.[4]

---

[4] The government misapplies to PETA's suit the separate *Monell v. New York City Dept. of Social Servs.* liability doctrine, which applies only to suits against local governments. *See* 436 U.S. 658 (1978). The government quotes *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 30 (2010), but attributes to section 1983 what the Supreme Court specifically attributed to *Monell*: "*Monell*'s . . . 'policy or custom' requirement also applies when plaintiffs seek prospective relief, such as an injunction or a declaratory judgment." *See* MTD at 24 n.127 (quoting same *Los Angeles* holding, except substituting § 1983 for *Monell*).

Nevertheless, PETA does allege that TAMU is applying its social media policy in a discriminatory way against the animal rights campaign and has discriminated against the campaign for years. FAC at ¶¶ 5, 43-47, 59. If the government categorizes PETA's viewpoint as "spam," MTD at 1, 4, 5, then TAMU's social media policy is itself "an official policy of viewpoint discrimination." *See Robinson*, 921 F.3d at 449. And in its settlement with TAMU of the previous lawsuit, PETA retained the right to sue TAMU over the policy and how TAMU applies it. FAC at ¶ 59.

### b.  PETA states a valid equitable claim under *Ex parte Young*.

PETA also states an independent claim at equity under *Ex parte Young*. "[PETA] has a cause of action against [the President of TAMU] at equity, regardless of whether it can invoke § 1983." *See Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 475 (5th Cir. 2020) (*en banc*) (citing *Young*, 209 U.S. at 149) (also citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("What our cases demonstrate is that, in a proper case, relief may be given in a court of equity to prevent an injurious act by a public officer.")) Because "[PETA] has satisfied *Young*'s requirements, its suit for injunctive relief against [the President of TAMU] may go forward." *Id.*

### CONCLUSION

For the foregoing reasons, PETA respectfully requests that the Court deny TAMU's motion to dismiss PETA's First Amendment claim for injunctive and declaratory relief.

Dated: December 8, 2021                              Respectfully submitted,

*/s/ Christopher W. Rothfelder*

CHRISTOPHER W. ROTHFELDER
Texas State Bar No. 2408470
Southern District I.D. 2449594
crothfelder@rothfelderfalick.com
Rothfelder & Falick, L.L.P.
1201 Louisiana St., Suite 550
Houston, TX 77002
713.220.2288 telephone

Local Counsel and Attorney-In-Charge
for Plaintiff People for the Ethical
Treatment of Animals, Inc.

OF COUNSEL:

MUKUND RATHI*
California Bar No. 330622
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
415.436.9333 telephone
415.436.9993 facsimile
mukund@eff.org

DAVID GREENE*
California Bar No. 160107
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
415.436.9333 telephone
415.436.9993 facsimile
davidg@eff.org

NAOMI GILENS*
California Bar No. 315813
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
415.436.9333 telephone
415.436.9993 facsimile
naomi@eff.org

*Admitted *pro hac vice*

Attorneys for Plaintiff
People for the Ethical Treatment of
Animals, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record via Electronic Delivery on this the 8th day of December, 2021.

*/s/ Christopher W. Rothfelder*
CHRISTOPHER W. ROTHFELDER